

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| GEORGE SOTEREANOS, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION 3:26-53-MGL |
| | § | |
| VOLKSWAGEN GROUP OF AMERICA, | § | |
| INC., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO REMAND
## AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

## I.      INTRODUCTION

Plaintiff George Sotereanos filed this lawsuit in the Richland County Court of Common Pleas against Defendant Volkswagen Group of America, Inc.  Volkswagen subsequently removed the case to this Court, claiming the Court has federal question jurisdiction, pursuant to 28 U.S.C. §1331, and diversity jurisdiction, in accordance with §1332.

In Sotereanos's complaint, he alleges breach of written warranty and breach of implied warranty pursuant to the federal Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301, et. seq.

Pending before the Court is Sotereanos's motion to remand.  Having carefully considered the motion, the response, the reply, the notice of removal, the record, and the applicable law, the Court will grant Sotereanos's motion to remand.

## II.    FACTUAL AND PROCEDURAL HISTORY

"On or about June 27, 2024, Plaintiff purchased a 2021 Audi SQ8 (SQ8), manufactured by [Volkswagen], Vehicle Identification No. WA1CWBF1XMD028677, for valuable consideration." Complaint ¶ 3 (citation omitted) (internal quotation marks omitted).  "The purchase price of the SQ8 totaled $63,429.00." *Id.* ¶ 4.  "The total cost of [Sotereanos's] purchase on credit, including [his] down payment of $10,000 [was] $76,249.36[.]"  Retail Installment Sale Contract at 1.

"In consideration for the purchase of the SQ8, [Volkswagen] issued and supplied to [Sotereanos] the remainder of its written warranty . . . included [a] four . . . year or fifty thousand . . . mile bumper to bumper and powertrain coverage[,] as well as other standard warranties fully outlined in [Volkswagen's] Warranty booklet."  Complaint ¶ 5.  Sotereanos asserts Volkswagen "undertakes at the time of sale the responsibility of repairing its vehicles, including the SQ8, and makes the accompanying promise to repair in consideration for the sale of the SQ8." *Id.* ¶ 6.

Sotereanos insists "[Volkswagen] issues and supplies to consumers, including [Sotereanos], its written warranty described above as an inducement for the sale of the SQ8." *Id.* ¶ 7.  "The retail price of the SQ8 is determined by [Volkswagen]." *Id.* ¶ 8.

"On or about June 27, 2024, [Sotereanos] took possession of the SQ8 and shortly thereafter experienced the defects listed below." *Id.* ¶ 9.  He claims "[t]he [purported] defects described below violate the written warranty issued to [Sotereanos] by [Volkswagen] as well as the implied warranty of merchantability." *Id.* ¶ 10.

Sotereanos avers he "brought the SQ8 to an authorized service dealer(s) of [Volkswagen] for the following [alleged] defects[,] which include[,] but are not limited to:

> a.    Defective electrical system as evidenced by driver's assist features not available, adaptive cruise control, adaptive headlights and lane keep assist unavailable, cameras blurring out, several warnings for driver's assistance coming on the dash, the intermittent illumination of the drive system malfunction light and adaptive cruise control light, MMI

screen freezing and rebooting itself and heated steering wheel not getting as warm as it used to;

b. Defective doors/electrical system as evidenced by doors not locking or unlocking, passenger front door lock unit malfunctioning, child safety lock system malfunctioning, passenger front door not locking and left rear door not locking;

c. Defective engine/electrical system as evidenced by the intermittent illumination of the check engine light;

d. Defective body/trim as evidenced by lower under tray on the right side falling, left side control knob on steering wheel inoperative and going up instead of down, driver's rear door sunshade not staying attached, rear sunshade withdraw inoperative, liftgate only going half way up and trunk not opening fully;

e. Defective transmission as evidenced by getting stuck in 3rd gear when using the manual transmission setting and using the paddle shifters and vehicle shifting into [fourth] gear after switching back to auto; and

f. Any additional defects, whether or not they are contained on any dealer repair orders

*Id.* ¶ 11.

Sotereanos states he "provided [Volkswagen], through its authorized dealers, sufficient opportunities to repair the SQ8." *Id.* ¶ 12. According to Sotereanos, "[a]fter a reasonable number of attempts and/or reasonable amount of time to cure the defects in [Sotereanos's] SQ8, [Volkswagen] was unable and/or failed to repair the defects as provided in [Volkswagen's] warranty." *Id.* ¶ 13.

Sotereanos claims he "justifiably lost confidence in the SQ8's safety and/or reliability." *Id.* ¶ 14. He contends "[s]aid defects could not have reasonably been discovered by [Sotereanos] prior to [Sotereanos's] acceptance of the SQ8." *Id.* ¶ 15 "As a result of the defects," Sotereanos says, he "revoked acceptance of the SQ8 in writing on July 24, 2025." *Id.* ¶ 16 (citation omitted).

Sotereanos maintains, "[a]t the time of revocation, the SQ8 was in substantially the same condition as at delivery except for damage caused by its own defects and ordinary wear and tear." *Id.* ¶ 17.  He submits, Volkswagen "refused [Sotereanos's] demand for revocation and has refused to provide [Sotereanos] with the remedies to which [Sotereanos] is entitled upon revocation." *Id.* ¶ 18.

Sotereanos further complains "[t]he SQ8 remains in a defective and unmerchantable condition and continues to exhibit the above-mentioned defects." *Id.* ¶ 19.  In addition, Sotereanos argues he "has been and will continue to be financially damaged due to [Volkswagen's] failure to comply with the provisions of its written warranty and its failure to provide [Sotereanos] with a merchantable SQ8." *Id.* ¶ 20.

In Sotereanos's prayer for relief, he asks

> for judgment against Manufacturer as follows: . . . The diminution in value of the SQ8 or incurred and/or needed costs repair and all incidental and consequential damages; . . . All reasonable attorney['s] fees, witness fees and all court costs and other fees incurred; and . . . Such other and further relief . . . the Court deems just and appropriate.

*Id.* at ¶¶ 29, 37.

After Volkswagen removed the case to this Court, Sotereanos filed his motion to remand, Volkswagen filed a response in opposition, and Sotereanos filed a reply in support.  Having been briefed on the relevant issues, the Court will now adjudicate Sotereanos's motion.

## III.     STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction.  They have original jurisdiction over two types of cases: federal questions under 28 U.S.C. § 1331, and diversity actions in accordance with 28 U.S.C. § 1332.

Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; and they have diversity "jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). "[F]ederal jurisdiction . . . is fixed at the time the complaint or notice of removal is filed." *Dennison v. Carolina Payday Loans, Inc*., 549 F.3d 941, 943 (4th Cir. 2008).

"Because removal jurisdiction raises significant federalism concerns, [a court] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chem. Co*., 29 F.3d 148, 151 (4th Cir. 1994). "If federal jurisdiction is doubtful, a remand is necessary." *Id*. "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Id*.

When considering a motion to remand, the Court accepts as true all relevant allegations contained in the complaint and construes all factual ambiguities in favor of the plaintiff. *Willy v. Coastal Corp*., 855 F.2d 1160, 1163–64 (5th Cir. 1988).

"Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss." *Hartley v. CSX Transp., Inc*., 187 F.3d 422, 425 (4th Cir. 1999).

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether Volkswagen has established the Court has federal question jurisdiction under the Warranty Act*

#### 1.     *Whether Volkswagen has established the S.C. Code provides federal question jurisdiction pursuant to the Warranty Act*

The Warranty Act provides, in relevant part, "[n]o claim shall be cognizable in a suit brought [in federal court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest[ ] and costs) computed on the basis of all claims to be determined in th[e] suit[.]" 15

5

U.S.C. § 2310(d)(3)(B).  The Fourth Circuit has held it is "beyond genuine dispute . . . , as to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson–Moss, in . . . breach of warranty actions."  *Carlson v. General Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013–14 (D.C. Cir. 1986)).

Sotereanos, whose amount of damages is unspecified in his complaint, maintains his Warranty Act claims fail to reach the $50,000 threshold.  Volkswagen, unsurprisingly, disagrees.

South Carolina Code §§ 36–2–714 and –715 set forth which damages a buyer may recover under the Uniform Commercial Code for a breach of warranty.  Section 36–2–714 states:

> (1) Where the buyer has accepted goods and given notification[,] . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

> (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

> (3) In a proper case any incidental and consequential damages under the next section (§ 36–2–715) may also be recovered.

*Id*.

And, S.C. Code § 36–2–715 provides:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

> (2) Consequential damages resulting from the seller's breach include

> (a)     any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b)     injury to person or property proximately resulting from any breach of warranty.

*Id.*

South Carolina law disallows punitive damages. *See Rhodes v. McDonald*, 548 S.E.2d 220, 222 (S.C. Ct. App. 2001) ("Had the legislature intended . . . punitive damages be available in breach of warranty cases, they could easily have included a provision providing for the recovery of damages of that kind."). Thus, given South Carolina law, punitive damages are unable to be added to the amount in controversy to reach the $50,000 jurisdictional amount. Pendent state-law claims are also excluded. *Saval*, 710 F.2d at 1032–33.

Volkswagen seeks to add the finance charges Sotereanos would be required to pay for financing the SQ8 to satisfy the $50,000 jurisdictional amount. As noted above, that would bring the total cost of the SQ8 to $76,249.36.

Although it appears the Fourth Circuit has failed to address whether finance charges should be included in determining damages under the MMWA, the plain meaning of the Warranty Act states interest charges are excluded when determining whether the $50,000 jurisdictional requirement has been met. *See* 15 U.S.C. § 2310(d)(3)(B). ("No claim shall be cognizable in a suit brought [in federal court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interest[ ] and costs) computed on the basis of all claims to be determined in this suit[.]" ).

Additionally, at least three circuits have declined to include finance charges in the calculation. *See, e.g., Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 883 (6th Cir. 2005) (holding "the question of whether federal jurisdiction exists under the Magnuson-Moss Warranty Act should not

be determined by whether a finance contract was used in purchasing an automobile"); *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) ("[T]he measure of damages for breach of warranty under the Uniform Commercial Code is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount[,]" and neglecting to include finance charges. (citation omitted) (internal quotation marks omitted)); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 521-22 (7th Cir. 2003) (calculating damages as "the party asserting federal jurisdiction must allege the cost of the replacement vehicle, minus both the present value of the allegedly defective vehicle and the value . . . the plaintiff received from the allegedly defective vehicle[,]" but failing to make any mention of including finance charges in the jurisdictional requirement).

Turning back to the South Carolina Code § 36–2–714: "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." *Id.*

In a removed case such as this, the jurisdiction of this Court is unable to be based on mere speculation and bare allegations the amount in controversy exceeds $50,000. Nevertheless, here, the Court is left to guess what the "value of the goods accepted[,]" *id.*, might be. Volkswagen fails to provide that information to the Court.

If Volkswagen should claim the value of the SQ8 accepted and the value of what the SQ8 would have been if it was as warranted is the same, that would equal zero damages, which obviously would eviscerate its $50,000 jurisdictional argument. In addition, absent is any mention of the amounts for the other S.C. Code § 36–2–715 recoverable damages.

8

Because Volkswagen neither offers any evidence and specific and concrete amount-based arguments to support its claim the $50,000 jurisdictional amount has been met under the South Carolina Code, nor provided the amounts awarded in other similar cases to demonstrate the award in this case would approach or exceed the $50,000 statutory jurisdiction requirement, the Court holds Volkswagen neglects to "demonstrat[e] . . . removal jurisdiction is proper[,]" *In re Blackwater*, 460 F.3d at 583, based on South Carolina Code §§ 36–2–714 and 715.

> **2.    Whether the Court has federal question jurisdiction, based on the Warranty Act, under the Gardynski-Leschuck formula**

Sotereanos asks the Court to compute his damages under the rubric the Seventh Circuit set out in *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). Defendants, however, contend "[t]he *Gardynski-Leschuck* formula . . . has not been adopted by the Fourth Circuit or any of its lower courts." Defendant's Response at 2. But, Volkswagen is mistaken.

A district court in the Southern District of West Virginia, referring to *Gardynski–Leschuck*, held "any refund of the purchase price must be offset by the value of the returned defective vehicle. [The plaintiffs] appear to state the correct approach." *McGowan v. Nissan North America, Inc.*, No. 2:12–cv–4927, 2012 WL 5878020, at *3 (S.D.W.Va. Nov. 20, 2012) (citing *Gardynski–Leschuck*, 142 F.3d at 957.).

*Gardynski–Leschuck*, of course, lacks any binding authority on this Court. But, for the sake of completeness, because Sotereanos raised the issue, the Court will briefly address it.

Under the *Gardynski-Leschuck* paradigm, the jurisdictional amount is calculated by taking "the replacement price—the price of a new car less the value of the used vehicle returned to [the manufacturer), less the value of the use [the plaintiff] obtained[.]" *Id*. at 957.

Applying the *Gardynski–Leschuck* model to the facts of this case, "the replacement price—the price of a new car[,]" *Gardynski–Leschuck*, 142 F.3d at 957, is $63,429.00. From that,

we subtract "the value of the used vehicle returned to [the manufacturer)," *id.*  Sotereanos looks to

the Kelley Blue Book, and comes up with a figure of $42,020.

Next, we subtract "the value of the use [the plaintiff] obtained[.]" *Gardynski–Leschuck*, 142

F.3d at 957.  Sotereanos suggests the Court quantify the value of Sotereanos's use of the SQ8 by

applying the formula set forth in S.C. Code § 56-28-40, the South Carolina Lemon:

> A reasonable allowance for use must be that amount directly attributable to use by the consumer before his first report of the nonconformity to the manufacturer, agent, or dealer, and must be calculated by multiplying the full purchase price of the vehicle by a fraction having as its denominator one hundred twenty thousand and having as its numerator the number of miles . . . the vehicle traveled before the first report of nonconformity.

*Id*.

In examining the documentation provided by Sotereanos, it appears the mileage on the SQ8

was 30,115 miles when he purchased it; and 30,761 miles at the first report of the nonconformity.

Thus, "the number of miles . . . the vehicle traveled before the first report of nonconformity[,]" S.C.

Code § 56-28-40, is 30,761 - 30,115 = 646.

Looking to the South Carolina Lemon law, as Sotereanos proposes, the Court "multipl[ies]

the full purchase price of the vehicle [$63,429.00] by a fraction having as its denominator one

hundred twenty thousand [120,000] and having as its numerator the number of miles . . . the vehicle

traveled before the first report of nonconformity [646]." *Id*.  Accordingly, plugging these figures

into the South Carolina Lemon Law formula: $63,429.00 x 646/120,000 = $341.46.  So, that figure

is "the value of the use [Sotereanos] obtained[.]" *Gardynski–Leschuck*, 142 F.3d at 957.

Now, calculating  Sotereanos's damages under the *Gardynski–Leschuck* framework:

| | |
|---|---|
| Price of the new car | $63,429.00 |
| Minus value of the used car | (42,020.00) |
| Minus value of the use obtained | (341.46) |
| Damages under *Gardynski–Leschuck* | $ 21,067.54 |

Unfortunately, Volkswagen refrained from engaging with Sotereanos's *Gardynski–Leschuck* legal argument. Thus, it has waived any arguments contrary to Sotereanos's contentions on these issues. *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n.* (4th Cir. 2014) (noting failure to present legal arguments waives the argument).

Suffice it to say, under *Gardynski–Leschuck*, Volkswagen is also unable to show this Court it is able to satisfy the Warranty Act's $50,000 federal jurisdiction requirement.

**B.      Whether Volkswagen has established the Court has diversity jurisdiction**

It is undisputed the parties in this action are diverse. The only question is whether Volkswagen has shown this case meets the in-access-of-$75,000 jurisdictional requirement.

Sotereanos requested attorney's fees in his complaint. And, Volkswagen spills a great deal of ink arguing their importance in determining the jurisdictional amount in this matter.

"Generally, attorney's fees are not included in the amount-in-controversy calculation, but courts have created two exceptions to this rule: (1) if the fees are provided for by contract; or (2) if a statute mandates or allows payment of attorney's fees." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 368 (C.A.4 (Md.), 2013) (citation omitted) (internal quotation marks omitted). Here, attorney's fees are recoverable pursuant to the Warranty Act, which provides as follows:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorney['s] fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine . . . such an award of attorney['s] fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

Sotereanos maintains Volkswagen's "claims relative to [Sotereanos's] attorney['s] fees . . . are too speculative to be included in the amount in controversy." Sotereanos's Reply at 4. Volkswagen is of the opposite opinion.

Although attorney's fees are recoverable pursuant to the Warranty Act, Volkswagens fails to present any evidence, or even argument, as to what Sotereanos's attorney's fees might be. And, the Court agrees with those courts holding it is disallowed from making such a determination based purely on speculation and conjecture. *See*, *e.g. GreatAmerica Leasing Corporation v. Rohr-Tippe Motors, Inc.*, 387 F. Supp.2d 992 (N.D. Iowa 2005) ("In determining the amount in controversy, the court cannot speculate about attorney's fees and interest that might accrue if the matter were to proceed to trial and the parties were to engage in acrimonious litigation"); *Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 914 (N.D. Cal. 2020) (declining to accept the defendant's argument the plaintiff's attorney's fees would make the case removable and stating "Defendants provide nothing more than mere conjecture.").

And, Volkswagen neglects to present the amount of attorney's fees awarded in other similar cases to demonstrate, when those fees are added to the other damages in this matter, they would be enough to cause the case to exceed the $75,000 jurisdictional requirement.

Volkswagen complains Sotereanos "refuses to stipulate . . . [his] request for damages and attorney['s] fees will not exceed $75,000,." Volkswagen's Response at 7. It goes on to say, "these fees make up a significant portion of the amount that will be put in issue over the course of this litigation." *Id*. To the extent Volkswagen contends Sotereanos's refusal to so stipulate establishes the jurisdictional requirement is met, the Court disagrees.

As then-district Judge Henry F. Floyd opined when presented with a somewhat similar situation, "[r]equiring plaintiffs at the outset of litigation to enter into a binding stipulation regarding damages could seriously handicap them as the case progresses." *Bell v. Qwest Communications Intern., Inc.*, No. 8:11-cv-37-HFF, 2011 WL 2601566, at *5 (D.S.C. June 30, 2011). "As a result, it is understandable . . . , despite believing in good faith . . . their claims do not exceed the jurisdictional amount, many plaintiffs would decline to enter into such a binding stipulation." *Id*.

\

12

Judge Floyd then went on to add: "A plaintiff's refusal to stipulate to maximum damages does not establish the claim exceeds $75,000. At best, it provides a tenuous and hypothetical inference." *Id*. The Court agrees with Judge Floyd's reasoning.

As to Volkswagen's other arguments, it fails to suggest, approximate, or identify the amount of those damages. And, it is certainly outside the province of this Court to do so.

Assuming diversity jurisdiction in this case would betray the Court's duty to remand when its jurisdiction is in doubt. *See Mulcahey*, 29 F.3d at 151 ("If federal jurisdiction is doubtful, a remand is necessary."). "After all, this Court's jurisdiction cannot rest upon the metaphysical possibility . . . the jurisdictional amount may . . . be met now or at some point in the future." *Martinez v. Sarratt*, No. 3:20-cv-0744-MGL, 2020 WL 1892357, at *6 (D.S.C. April 16, 2020).

For all these reasons, the Court holds Volkswagen is unable to demonstrate this Court has 28 U.S.C. § 1332 diversity jurisdiction over this matter.

### C.      *Whether Sotereanos is entitled to attorney's fees*

Sotereanos "requests . . . the Court order [Volkswagen] pay [him] just costs and any actual expenses, including attorney['s] fees, incurred as a result of the removal." Sotereanos's Motion at 13. He neglects, however, to offer any legal or factual argument in support his one-sentence request. To make things worse, Volkswagen inexplicably fails to address the request.

In most cases, this Court would hold the defendant's failure to address the argument indicates it has waived any argument against the requested relief. *See, e.g.*, *Allen v. Holiday Kamper Co. of Columbia, LLC*, NO. 4:18-cv-1885-MGL, 2019 WL 4094938, at *2 (D.S.C. Aug. 29, 2019) ("The [plaintiffs] neglect to address [a particular issue] in their response to Defendants' motion. Therefore, any argument in opposition they might have is waived.").

Nevertheless, even when a party waives an argument, the Court must still follow the law. Here is the law and arguments Volkswagen should have brought to the Court's attention, instead of relying the Court to come up with them on its own:

"Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C. § 1447(c)] only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Even when the Court determines removal was improper, however, "fees should be denied" so long as the removal was "objectively reasonable." *Id*. at 141. In other words, "the removing party has some leeway to be wrong." *Black v. Mantei & Assoc., Ltd*., 145 F.4th 528, 534 (4th Cir. 2025).

So, the parties have left to the Court alone the task of perusing the record in an effort to determine whether the removal was "objectively reasonable[,]" *Martin*, 546 U.S. at 141, without any input from either one of them. Although the Court must take an unacceptable route to get there, it concludes Defendants' removal of the case to this Court was "objectively reasonable[,]" *Martin*, 546 U.S. at 141. Consequently, the Court will deny Sotereanos's request for attorney's fees.

## V.     CONCLUSION

In light of the discussion and analysis above, it is the judgment of the Court Sotereanos's motion to remand this case to the Richland County Court of Common Pleas is **GRANTED**; and his request for attorney's fees is **DENIED**.

**IT IS SO ORDERED.**

Signed this 25th day of June, 2026, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE